Christopher Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile:  (213) 330-7152
christopherp@hbsslaw.com

Rachel E. Fitzpatrick (*pro hac vice*)
Molly Booker (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ  85003
Telephone: (602) 840-5900
Facsimile:  (602) 840-3012
mollyb@hbsslaw.com
rachelf@hbsslaw.com

*Attorneys for the Pfaff Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:<br><br>PROPECIA (FINASTERIDE) PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT APPLIES TO:<br><br>*Kelly S. Pfaff, individually, on behalf of J.A.P. and C.P., minors, and as Trustee of the Pfaff Family Trust*<br><br>        Plaintiffs,<br><br> v.<br><br>*Merck & Co., Inc. and Merck Sharp & Dohme Corp*,<br><br>        Defendants. | No. 3:20-mc-80148-AGT<br><br><br><br>**REPLY IN SUPPORT OF MOTION TO QUASH OR MODIFY NONPARTY SUBPOENA** |

010397-11/1344740 V1

Merck's opposition to Plaintiffs' Motion to Quash or Modify the Trace3 Subpoena is primarily based upon the false premise that Plaintiffs lack standing to contest the nonparty subpoena. Merck asserts that a plaintiff may only move to quash a nonparty subpoena on the basis of privilege, which includes privacy. Opp. at 6-10. Plaintiffs have standing on constitutional privacy interest grounds alone. *See Am. Broad. Companies, Inc. v. Aereo, Inc.*, No. CV-12-80300-RMW, 2013 WL 1508894, at *2 (N.D. Cal. Apr. 10, 2013) quoting *Knoll, Inc. v. Moderno, Inc.*, No. C 12-80193-MISC SI, 2012 WL 4466543, at *2 (N.D. Cal. Sept. 26, 2012) (recognizing standing to challenge nonparty subpoena where party possesses cognizable privacy interest in the information sought).

Merck argues the Trace3 Subpoena is "seeking relevant and discoverable information that would shed light on Mr. Pfaff's mental and physical condition before, during and after his Propecia use and during the weeks and months leading up to his suicide." Opp. at 1. But the Trace3 Subpoena seeks every single employment activity of decedent John Pfaff while employed by Trace3, mostly without temporal limits at all. To be clear, Merck's subpoena to Mr. Pfaff's employer seeks "all information related to employment of John D. Pfaff" including twelve different requests for all information related to Mr. Pfaff's hiring, firing, promotion, attendance, performance, medical reports, all records in his personnel file, training, educational records, benefits, compensation, speaking engagements, published works, counseling and coaching, schedules, calendars, emails, passwords, usernames, policies, and more. This vast universe of information is overbroad on its face. It also violates the right to privacy afforded by the California Constitution. And, it is burdensome, not only because of the inappropriate breadth of the requests, but also because Merck seeks the electronically stored information (ESI) and deleted data for each item of this broad-brush list of every employment activity and touch of Mr. Pfaff during his long tenure at Trace3. "Merck believes any of [sic] numerous other circumstances contributed to Mr. Pfaff's well-being and tragic death…", but Merck fails to articulate with any specificity these alternate circumstances it believes may have contributed, and has not articulated why such a wide and far-reaching span of Mr. Pfaff's employment records is relevant to those circumstances. *See generally* Opp.

Merck may not use a nonparty subpoena to circumvent ordinary discovery protections and go on a fishing expedition. The Subpoena must be quashed or modified to protect Plaintiffs and the

REPLY ISO NOTICE OF MOTION AND
MOTION TO QUASH A SUBPOENA          - 1
010397-11/1344740 V1

1  bounds of appropriate and proportional discovery. *See Little v. City of Seattle*, 863 F.2d 681, 685 (9th
2  Cir. 1988) (acknowledging district court's "wide discretion in controlling discovery" and "clear
3  abuse of discretion" standard).

### I.   RELEVANT FACTUAL BACKGROUND[1]

Merck misstates the facts of Plaintiffs' prior discovery productions. The Pfaff Plaintiffs served their completed Plaintiff Profile Form (PPF) on October 23, 2015,[2] which <u>included</u> responsive documents and executed authorizations in accordance with PPO No. 5.[3] Plaintiffs served a revised PPF on January 7, 2016.[4] Then, for three years, *Pfaff* sat largely dormant in the MDL while Lead Counsel and Merck litigated the sexual dysfunction side effects of Propecia and finasteride. When a settlement was reached in the MDL the Pfaff Plaintiffs opted out, and in early 2019, the *Pfaff* litigation resumed in earnest. In May 2019, in accordance with the scheduling order, Plaintiffs produced more than 700 pages of documents based on the MDL's broad PPF Document Requests[5] that included information they obtained from Trace3 in response to a written record request.[6] Plaintiffs continued to supplement this production as they located or obtained discoverable information. Notably, the MDL schedule has not required Merck to serve disclosures in the *Pfaff* case, and Merck has yet to meaningfully articulate—including in the objectionable Trace3 Subpoena or its Opposition to this motion—the facts or theories supporting its defenses.

Merck noticed Plaintiff Kelly Pfaff's deposition for February 11, 2020, a few months before the April 30, 2020 then-deadline for case-specific discovery.[7] Only after Ms. Pfaff's deposition did Merck, for the first time, identify or request Plaintiffs search for <u>specific</u> information, e.g., particular

---

[1] Merck's Opposition includes a multitude of factual assertions that are either misleading or outside the scope of this Motion. Plaintiffs respond as necessary here.

[2] Not October 22, 2015. *See* Opp. at 2.

[3] Sept. 18, 2020 Decl. of R. Fitzpatrick at ¶ 2.

[4] Sept. 18, 2020 Decl. of R. Fitzpatrick at ¶ 3.

[5] *See* Aug. 28, 2020 R. Fitzpatrick Decl. at ¶ 4; Ex. B (MDL Doc. Reqs.).

[6] Aug. 28, 2020 Decl. of R. Fitzpatrick at ¶ 4.

[7] Due to the COVID-19 pandemic, the parties agreed to an extension of the discovery schedule in early April 2020.

names and things in Ms. Pfaff's ESI, while also claiming overall deficiencies in Plaintiffs' ESI production.[8] Because it is unreasonably burdensome for Plaintiffs to comb through every email, text, and electronic file in their possession spanning more than twelve years, Plaintiffs repeatedly asked Merck for a list of search terms to use in locating discoverable information and resolve any outstanding disputes.[9] Merck refused to do so for six months, until just last month, when it produced more than seventy-five search terms to Plaintiffs.[10]

To date, Plaintiffs produced discoverable information in their possession, custody, or control regarding Trace3 and certain colleagues of Mr. Pfaff, and are currently running Merck's August 24, 2020 search terms—including the term "Trace3"—and their variations across Plaintiffs' ESI. On September 23, 2020, the MDL Court will hold a telephonic status conference to address the ongoing dispute over Merck's discovery of Plaintiffs.

## II.   ARGUMENT

**A.   Plaintiffs have standing to move to modify or quash the Trace3 Subpoena under either privacy or privilege grounds.**

A party has standing to move to quash or modify a nonparty subpoena where "they possess *a cognizable privacy interest* in the ... documents and communications sought by the subpoena…" *Am. Broad. Companies, Inc.*, 2013 WL 1508894 at *2, quoting *Knoll, Inc.,* 2012 WL 4466543 at *2 (emphasis added); *see also Bickley v. Schneider Nat., Inc.*, No. C 08-5806 JSW JL, 2011 WL 1344195, at *2 (N.D. Cal. Apr. 8, 2011) ("Federal courts expressly recognize a constitutionally-based right of privacy that can be raised in response to discovery."). California law recognizes a right to privacy for employment records. *Bickley*, 2011 WL 1344195, at *2 (finding employee's employment information "protected by the constitutional right to privacy."); *see also Babb v. California Teachers Ass'n*, 378 F. Supp. 3d 857, 885 (C.D. Cal. 2019) (scope and application of California constitutional right of privacy broader and more protective than its federal counterpart).

---

[8] Defs.' Ex. 5.

[9] See, e.g., Defs.' Exs. 7, 9, 12.

[10] Sept. 18, 2020 Decl. of R. Fitzpatrick at ¶ 4; Ex. C (Defs.' Aug. 24, 2020 ltr.).

The Trace3 Subpoena indisputably seeks information protected by a constitutional privacy right, which affords Plaintiffs standing.

Merck improperly conflates the terms privacy and privilege, swapping the actual standard ("privacy") with its preferred word "privilege." Opp. at 7. *See Am. Broad. Companies, Inc.*, 2013 WL 1508894, at *2 quoting *Knoll, Inc.*, 2012 WL 4466543, at *2 ("The movant must demonstrate, for example, "that they possess a cognizable privacy interest in the ... documents and communications sought by the subpoena, and, thus, "have standing to move to quash the subpoena seeking those documents."). Merck also relies heavily on *California Sportfishing*, 299 F.R.D. at 643, to argue a party only has standing where they can claim a privilege to the documents sought. Opp. at 6-7. But *California Sportfishing*, a 2014 case from the Eastern District of California analyzing a plaintiff's standing, relies on a federal Colorado case explicitly holding that both claims of privilege and privacy interests establish standing to intervene in a nonparty subpoena. *See Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997) ("A party also may move to quash a subpoena upon a showing that there is a privacy interest applicable"). Regardless, this District explicitly holds standing exists so long as a right to privacy over the information sought also exists. *Am. Broad. Companies, Inc.*, 2013 WL 1508894, at *2. Merck appears to concede this point. Opp. at 9.

Merck further relies on *Tucker v. Maco Insurance Co.*, 2019 WL 3767579 (E.D. Cal. Aug. 9, 2019) to argue Plaintiffs lack standing to quash or modify the Trace3 Subpoena, but that case is inapposite on its facts. In *Tucker*, the plaintiff claimed emotional distress damages relating to defendant's failure to pay insurance proceeds. Defendant issued three subpoenas to medical providers seeking plaintiff's medical records relating generally to emotional distress, anxiety, or depression, and plaintiff objected on multiple grounds. The *Tucker* court held that, while a party has standing to quash a subpoena served on a third-party as to claims of privilege, the plaintiff waived privileges related to her mental health medical records <u>from the relevant time period</u> by seeking emotional distress damages, which were ongoing. *Tucker*, 2019 WL 3767579 at *5. But here, Merck seeks Mr. Pfaff's employment records, not medical records. Plaintiffs concede their claims place certain of John Pfaff's medical conditions and treatment at issue, including therapy and mental health treatment, and executed HIPAA releases and produced medical records accordingly. But unlike in

*Tucker*, where the defendant sought medical records from health care providers relating to plaintiff's claims, Merck seeks all of Mr. Pfaff's employment records, mostly without narrowing the applicable time period, claiming they are relevant to Mr. Pfaff's suicide. As just one example, it is unclear how Mr. Pfaff's historical user names or presentations given before he began ingesting Propecia could have any bearing on the claims or defenses at stake.

Last, Merck argues the substantive limits or scope of the privacy right may not extend to all of Mr. Pfaff's work-related documents with Trace3. Opp. at 9. But Plaintiffs need only establish a privacy right exists in the first place to obtain standing. Mr. Pfaff's constitutional privacy right to his employment information buys Plaintiffs a seat at the table to challenge the subpoena. And based on the overbroad reach of the Trace3 Subpoena—at least some of the materials are facially protected. Plaintiffs have standing to move to quash the Trace3 Subpoena.

**B.     The permissible scope of nonparty discovery is narrower and Merck failed to issue targeted discovery, opting instead to go fishing.**

Under California law, the scope of discovery is not as broad for nonparties as compared to parties. *Catholic Mut. Relief Soc. V. Super. Ct.*, 42 Cal. 4th 358, 366 n.6 (2007). A nonparty subpoena may be quashed for seeking, for example, documents or information outside the scope of discovery,[11] protected by the right to privacy,[12] containing confidential or protected trade secrets,[13] or where it is unreasonable and oppressive.[14] For ESI in particular—which Merck seeks in each category of documents of the Trace3 Subpoena—California has enacted special statutes governing these requests. Merck may not seek ESI it can obtain from another source or in another manner that is more convenient or less burdensome. *See* Cal. Civ. Proc. Code Sections 1985.8(e) and 2020.220(e); *see also* Fed. R. Civ. P. 26(b)(2)(C) (district court must quash or modify nonparty subpoena where discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive").

---

[11] *See* FRCP 26.

[12] Cal. Const. Art I, Section 1.

[13] *See* FRCP 45.

[14] Cal. Civ. Proc. Code Sections 2017.020(a), 2019.030(a)(2), and 2023.010(c); Cal. Civ. Proc. Code §§ 1985.8(e) and 2020.220(e).

Merck has already taken two bites of the Trace3 apple, and dilatorily sought alternative discovery about the company's effect on Mr. Pfaff to Merck's own detriment. Trace3 fulfilled both Plaintiffs' and Merck's record requests, and Merck received these documents more than a year ago. Merck never served Plaintiffs with specific document requests to narrow in on information it considered relevant to its defenses (Trace3-induced "stress"). Merck noticed Ms. Pfaff's deposition (another source for potentially relevant information about decedent John Pfaff and Trace3) just two months before the then-deadline for discovery. Only after this deposition did Merck take any action, albeit via informal letter requests, to obtain targeted information from Plaintiffs about Trace3. Just in the last couple months, Merck noticed (but has not taken) the deposition of Hayes Drumwright, former CEO and Mr. Pfaff's direct supervisor at Trace3, a clear source of potentially relevant information about Mr. Pfaff's work life. And, critically, Merck chose to serve this Trace3 Subpoena late in the discovery game. Now it seeks everything Mr. Pfaff touched in his tenure at Trace3, a facially overbroad and irrelevant grab for documents and information it cannot—or failed to—obtain through ordinary means of discovery.

The Trace3 Subpoena also fails to target specific topics or the alternate "circumstances" that Merck believes could have contributed to Mr. Pfaff's suicide that would be in Trace3's possession. Merck claims it could not limit the Trace3 Subpoena requests "because it was unclear exactly what documents Trace3 possessed." Opp. at 5. But Merck does not need to know the entire sphere of Trace3 information relating to John Pfaff in order to craft tailored, permissible discovery of a nonparty under the Rules. For example, Merck could articulate with some specificity the kinds of information (e.g., emails) and the topics (e.g., John's performance) it seeks from Trace3. Because Merck has not made disclosures in this case, Plaintiffs cannot guess at what circumstances and documents it hopes to find. Nor is it Plaintiffs' job to conduct Merck's discovery for it. The Trace3 Subpoena, and Merck's defense of it, casts a wide net without actually articulating the various circumstances Merck hypothesizes may exist. Merck missed its opportunity to obtain more specific discovery in a way that was less burdensome and more likely to elicit relevant information. The Trace3 Subpoena must be quashed or modified as a result.

1     **C.    The Trace3 Subpoena violates Pfaff's right to privacy, which has not been waived.**

2           The California Constitution recognizes an individual's right to privacy. CA CONST Art. 1, §
3     1; *City of Santa Barbara v. Adamson*, 27 Cal.3d 123, 130 (1980). This right of privacy protects
4     against the unwarranted, compelled disclosure of various private or sensitive information regarding
5     one's personal life, including financial affairs, political affiliations, medical history, sexual
6     relationships, and confidential personnel information. *Hooser v. Superior Court*, 101 Cal.Rptr.2d
7     341, 84 Cal.App.4th 997 (App. 4 Dist. 2000). Employment records, including those sought in the
8     Trace3 Subpoena, may contain information about an individual's eligibility for employment,
9     promotion, termination, disciplinary actions, evaluations, character, and more. The Trace3 Subpoena
10    is directed at Mr. Pfaff's long-time employer, a company from which he resigned as President. While
11    some records in Trace3's possession may in fact bear on the claims and defenses in this case, the
12    documents sought by Merck include protected employment information outside the temporal and
13    substantive bounds of this case.

14          Merck must not be allowed to run roughshod over the privacy rights of Mr. Pfaff and third
15    parties simply because it wishes to inquire into Mr. Pfaff's entire employment history. In *Greyhound*
16    *Corp. v. Superior Court*, 56 Cal.2d 355, 384-85 (1961) (superseded by statute on other grounds), the
17    court identified examples of "entirely improper" fishing expeditions where the discovery
18    "insufficient[ly] identify[es] [] the requested information to acquaint the other party with the nature
19    of information desired, attempt[s] to place the burden and cost of supplying information equally
20    available to both solely upon the adversary, [and] plac[es] more burden upon the adversary than the
21    value of the information warrants." The Greyhound court expressly recognized the court's powers to
22    control such "fishing." *Id.* Here, because it is a nonparty Subpoena, Plaintiffs' counsel cannot take a
23    first look at records to ensure that they are relevant and non-privileged before disclosure. Without
24    more specificity, the value of the subpoenaed documents are also unknown. Merck may not use the
25    subpoena power to unearth and uncover every bit of personal and private detail of Mr. Pfaff's life
26    regardless of whether those matters have any connection to the issues in this case.

27          Merck contends the Pfaff Plaintiffs waived any stated privileges or protections "by putting
28    the contents at issue in this case." Opp. at 9. But in every case cited by Merck supporting its waiver

REPLY ISO NOTICE OF MOTION AND
MOTION TO QUASH A SUBPOENA          - 7
010397-11/1344740 V1

argument, the issue was whether the privilege for medical records or other HIPAA-protected communications were waived by the plaintiff's claims. Opp. at 9. Critically, the Trace3 Subpoena does not seek medical records from a health care provider, but rather, employment records and information. Plaintiffs executed authorizations for the disclosure of Mr. Pfaff and Plaintiffs' medical records, which are in Merck's possession. Merck cites no case that stands for the proposition that a plaintiff waives their right to privacy surrounding employment records and information by making an injury or death claim. To be sure, the injury and death did not occur at Trace3 and there is no articulated claim or defense to that effect. Put simply, Plaintiffs have not waived privacy rights protecting the contents of Mr. Pfaff's employment records sought by the Trace3 Subpoena by initiating this lawsuit.

Even if the Trace3 Subpoena sought mostly medical records and information, which it does not, the mere filing of a wrongful death lawsuit does not automatically strip a plaintiff of the right to privacy with respect to his medical records and information. Although by bringing suit there may be an implicit partial waiver of the right to privacy, "the scope of such waiver must be narrowly, rather than expansively construed, so that plaintiffs will not be unduly deterred from instituting lawsuits by fear of exposure of private activities." *Davis v. Superior Court*, 7 Cal.App.4th 1008 (1992). The California Supreme Court has made clear that such waiver extends "only to information relating to the medical conditions in question, and does not automatically open all of a plaintiff's past medical history to scrutiny." *Britt v. Superior Court*, 20 Cal.3d 844, 849 (1978). Furthermore, "[e]ven when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a careful balancing of the compelling public need for discovery against the fundamental right of privacy." *Davis*, 7 Cal.App.4th at 1014. "The scope of discovery must be narrowly circumscribed, drawn with narrow specificity, and must proceed by the least intrusive manner." *Id.* The party seeking the constitutionally protected information has the burden of establishing that the information sought is directly relevant to the claims." *Tylo v. Superior Court*, 55 Cal.App.4th 1397, 1387 (1997).

By issuing the Trace3 Subpoena, Merck is fishing for an overbroad set of unnecessary personal information outside the facts or information that may support a claim or defense in the case. It must be quashed or modified.

### III.   CONCLUSION

Plaintiffs respectfully request the Court quash or modify the Trace3 Subpoena.

DATED:  September 18, 2020

Respectfully submitted by,

HAGENS BERMAN SOBOL SHAPIRO LLP

By  */s/ Rachel E. Fitzpatrick*
    Rachel E. Fitzpatrick
Molly A. Booker
11 W. Jefferson Street, Suite 1000
Phoenix, AZ  85003
Telephone:  (602) 840-5900
Facsimile:  (602) 840-3012
Email: RachelF@hbsslaw.com
      MollyB@hbsslaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP
Christopher Pitoun (SBN 290235)
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile:  (213) 330-7152
Email:   christopherp@hbsslaw.com

*Attorneys for Plaintiffs*